IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GRAHAM L. BANES,

                    Plaintiff,
        v.

JON LEVINE, DEBRA JURMU,                                    OPINION and ORDER
STEVEN ACKERMAN, JOHN KARL SCHOLZ,                              25-cv-37-jdp
BETH MEYERAND, JAKE SMITH, and
KELLY MARKS,

                    Defendants.

---

Plaintiff Graham L. Banes was an associate scientist with the Wisconsin National Primate Research Center, which is part of the University of Wisconsin–Madison. Banes alleges that defendants, all of whom are UW–Madison employees, decided not to renew his employment contract and relinquished to the grant sponsor the funds supporting his research because of his prior lawsuit against an accrediting organization, the Association of Zoos and Aquariums, and the Director of the Henry Vilas Zoo. Defendants move for summary judgment, and the court will grant their motion, because Banes's claims are barred by sovereign immunity.

ANALYSIS

This case is the latest entry in a series of cases before this court about the scope of sovereign immunity when a state employee sues other state employees for constitutional violations.[1] *Hoffman*, *Melgaard*, and *Diaz* presented the same issue: whether sovereign immunity

---

[1] *Hoffman v. Bd. of Regents*, No. 23-cv-853-jdp, 2025 WL 1504376 (W.D. Wis. May 27, 2025); *Melgaard v. Wis. Dep't of Nat. Res.*, No. 24-cv-561-jdp, 2025 WL 3268370 (W.D. Wis. Nov. 24, 2025); *Diaz v. Schmidt*, No. 24-cv-161-jdp, 2026 WL 478187 (W.D. Wis. Feb. 20, 2026).

prevents plaintiffs from bringing retaliation claims against their state-employed supervisors or coworkers for depriving them of the benefits of their employment relationships with the state. In all three cases, the court concluded that the court of appeals' decisions in *Omosegbon v. Wells*, 335 F.3d 668 (7th Cir. 2003), and *Haynes v. Indiana University*, 902 F.3d 724 (7th Cir. 2018), required the court to dismiss the cases on sovereign immunity grounds.

The result here is the same. The court takes the opportunity here to further explain the doctrinal basis for this result.

## A.  Basic sovereign immunity principles

Sovereign immunity is a threshold issue that the court must address before considering a case's merits. *See Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 822–23 (7th Cir. 2016). In our federal system, each state is a sovereign entity. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). Immunity from suit is a fundamental aspect of a state's sovereignty. *See Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 238 (2019).

The doctrine of sovereign immunity generally bars private parties from suing a state without the state's consent. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). Sovereign immunity shields nonconsenting states from having to defend against a lawsuit or risk a default judgment. *See Alden v. Maine*, 527 U.S. 706, 749 (1999). It also protects states from "being thrust . . . against [their] will, into the disfavored status of a debtor, subject to the power of private citizens to levy on [their] treasur[ies]." *Galette v. N.J. Transit Corp.*, 146 S. Ct. 854, 865 (2026) (quoting *Alden*, 527 U.S. at 749).

The doctrine of sovereign immunity limits the ability of federal courts to hear cases by private parties against nonconsenting states. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–98 (1984). Indeed, the judicial power established in Article III of the U.S.

Constitution generally does not extend to such cases. *See In re State of N.Y.*, 256 U.S. 490, 497 (1921). As a result, nonconsenting states are not typically subject to suit in federal court. *See Blatchford v. Native Vill. of Noatak & Cir. Vill.*, 501 U.S. 775, 779 (1991). These principles are "nowhere explicitly set out in the Constitution," but the Eleventh Amendment is the "single most relevant provision" spelling them out. *Allen v. Cooper*, 589 U.S. 248, 254 (2020).

The Eleventh Amendment was ratified in the wake of the Supreme Court's decision in *Chisholm v. Georgia*, 2 U.S. 419 (1793), which held that states could be sued by citizens of other states. The Eleventh Amendment abrogated the Court's decision in *Chisholm*. *See Hans v. Louisiana*, 134 U.S. 1, 11 (1890). The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although the text of the Eleventh Amendment is limited to suits against states by citizens of another state (or a foreign state), the Supreme Court has construed the Eleventh Amendment as clarifying that "States retain their immunity from suit regardless of the citizenship of the plaintiff," which means that a state's own citizens also may not sue the state without its consent. *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 499 (2021). The remainder of this opinion focuses on sovereign immunity under the Eleventh Amendment.

Eleventh Amendment immunity does not fully constrain federal courts from hearing cases by private parties against nonconsenting states. *Allen*, 589 U.S. at 255. Instead, federal courts may hear these suits under three conditions. *Council 31 of the Am. Fed'n of State, Cnty. and Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012). First, the structure of the U.S. Constitution may reflect a waiver of sovereign immunity. *See Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580, 587–89 (2022). Second, Congress may act pursuant to its authority

3

under an amendment passed after the Eleventh Amendment (*e.g.*, the Fourteenth Amendment) by enacting legislation abrogating Eleventh Amendment immunity. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Third, private parties may seek prospective relief against state officials for ongoing violations of federal law under the *Ex Parte Young* doctrine. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997). The second condition is at issue here.

## B. Sovereign immunity and § 1983

Banes contends that defendants retaliated against him for exercising his rights under the First Amendment in violation of 42 U.S.C. § 1983. Dkt. 46. Section 1983 is derived from the Civil Rights Act of 1871, which Congress passed during the Reconstruction era to enforce the Fourteenth Amendment. *See District of Columbia v. Carter*, 409 U.S. 418, 423–29 (1973). But Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983. *See Quern v. Jordan*, 440 U.S. 332, 341–45 (1979). Nor did Congress intend for states to constitute suable "person[s]" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–70 (1989). State officials acting in their official capacities are also not suable "person[s]" within the meaning of § 1983, because suits against them are suits against their office, which is "no different from a suit against the State itself." *Id.* at 71.

In contrast, state officials generally may be sued in their individual capacities without raising sovereign immunity concerns. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991). The plaintiffs in *Hafer* sued their former state-employed supervisor, asserting that she terminated them without due process and in violation of their First Amendment rights. *Melo v. Hafer*, 912 F.2d 628, 630 (3d Cir. 1990). The Supreme Court granted certiorari "to address the question whether state officers may be held personally liable for damages under § 1983 based upon actions taken in their official capacities." *Id.* at 24. The Court's holding in *Hafer* is

4

narrow: "We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Id.* at 31.[2]

But the fact that a plaintiff sues individual defendants in their individual capacities does not end the sovereign immunity inquiry. *See Ex parte Ayers*, 123 U.S. 443, 492 (1887). That's because the question of whether a suit is barred by Eleventh Amendment immunity "is not always determined by reference to the nominal parties on the record." *Poindexter v. Greenhow*, 114 U.S. 270, 287 (1885); *see Coeur d'Alene Tribe of Idaho*, 521 U.S. at 270 ("The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading."). If a suit is only nominally against the individual defendants and is really and substantially against the state, then it is barred by Eleventh Amendment immunity. *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001). So the court must determine whether the state is the real party in interest, not the individual defendants. *Lewis v. Clarke*, 581 U.S. 155, 161–62 (2017). To determine whether the state is the real party in interest, the court must consider the "essential nature and effect of the proceeding." *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 773 (7th Cir. 2011) (citation omitted).

The state is the real party in interest if the suit is "in essence one for the recovery of money from the state." *Ford Motor Co. v. Dep't of Treasury of State of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002). Thus a suit by a private party "seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v.*

---

[2] The Court did not hold, as Banes contends, that sovereign immunity never applies to individual-capacity claims under § 1983, Dkt. 70, at 59; indeed, the Court noted that Eleventh Amendment immunity applies when "a plaintiff seeks damages from the public treasury," *Hafer*, 502 U.S. at 30.

*Jordan*, 415 U.S. 651, 663 (1974); *see Dugan v. Rank*, 372 U.S. 609, 620 (1963). Put differently, private parties may not sue state officials in their individual capacities if those suits "would have the effect of requiring a state to make retroactive payments, even to correct a past constitutional wrong." *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 292 (7th Cir. 1993).[3]

## C.  State-employment context

Determining whether individual-capacity claims are effectively against the state "can be a knotty and fact-bound inquiry." *Haynes v. Ind. Univ.*, 902 F.3d 724, 732 (7th Cir. 2018). But a pair of Seventh Circuit cases applying these principles in the state-employment context guides the court's resolution of this case.

In *Omosegbon v. Wells*, 335 F.3d 668 (7th Cir. 2003), an untenured faculty member sued university officials in their individual capacities under § 1983 for violating his rights to due process and academic freedom after the officials chose not to renew his employment contract. *Omosegbon*, 335 F.3d at 671. The court held that the plaintiff's individual-capacity claims for damages failed because he sought "monetary compensation based on an employment contract." *Id.* at 673. The court reasoned that it was "inescapable that any resulting judgment [would] be paid by the state rather than the individual defendants," particularly given that the university officials were not parties to the contract in their individual capacities. *Id.*

In *Haynes v. Indiana University*, 902 F.3d 724 (7th Cir. 2018), an assistant professor sued university administrators in their individual capacities, asserting that he was denied tenure because of his race in violation of 42 U.S.C. § 1981. *Haynes*, 902 F.3d at 728. The court held

---

[3] There is an exception to this rule: a state "cannot manufacture immunity for its employees simply by volunteering to indemnify them." *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 778 (7th Cir. 1991).

that sovereign immunity barred Haynes' claims against the administrators because he sought "monetary relief for an injury relating to his employment with the State." *Id.* at 732. The court reasoned that the case was "materially the same" as *Omosegbon* because the administrators "were not parties to Haynes's employment contract in their individual capacities," and the court had "no reason to believe that they, rather than the University, would foot the bill for a resulting judgment" in the plaintiff's favor. *Id.*

This court has construed *Omosegbon* and *Haynes* to stand for the following principle: "sovereign immunity bars a state-employed plaintiff from bringing individual-capacity claims against state-employed supervisors or coworkers who deprived him of rights, benefits, or opportunities arising from his employment relationship with the state." *Melgaard v. Wis. Dep't of Nat. Res.*, No. 24-cv-561-jdp, 2025 WL 3268370, at *4. This court later clarified that the principle in *Omosegbon* and *Haynes* does not extend to constructive discharge claims because those claims involve personal mistreatment of the plaintiff by the individual defendant, not the denial of the benefits of state employment. *Mahmoud v. Bd. of Regents of the Univ. of Wis. Sys.*, No. 24-cv-384-jdp, 2026 WL 242087, at *7 (W.D. Wis. Jan. 29, 2026). But claims alleging that supervisors or coworkers unlawfully demoted, transferred, brought disciplinary action against, and failed to promote state employees or renew their contracts are barred by sovereign immunity because they all involve the deprivation of the benefits that the state gave to an individual by employing that individual. *Diaz v. Schmidt*, No. 24-cv-161-jdp, 2026 WL 478187, at *3 (W.D. Wis. Feb. 20, 2026).

## D. Application to Banes's claims

Banes's claims are based on defendants' decisions to not renew his employment contract and to relinquish grant funds for his research. These actions deprived Banes of the benefits of

his employment relationship with the State. The court sees no meaningful distinction between this case and *Omosegbon* and *Haynes*, so binding circuit precedent compels the dismissal of this case on sovereign immunity grounds.

Banes resists this conclusion. He attempts to distinguish *Omosegbon* and *Haynes*, arguing that sovereign immunity barred the plaintiffs' claims in those cases because the state itself was responsible for denying them the benefits of their employment relationships, not the individual defendants. *See* Dkt. 70, at 71. Banes frames *Omosegbon* as involving the *state's* breach of the plaintiff's employment contract, and he frames *Haynes* as involving the *state's* denial of an academic status. *See id.* But *Omosegbon* and *Haynes* did not turn on the extent of the individual defendants' involvement in the allegedly retaliatory actions; instead, those cases turned on the injuries suffered by the plaintiff. *Diaz*, 2026 WL 478187, at *3. Here, like the plaintiffs in *Omosegbon* and *Haynes*, Banes seeks monetary relief for the denial of the benefits of his employment relationship with the state.[4]

*Omosegbon* and *Haynes* require the court to dismiss Banes's claims on sovereign immunity grounds. Banes's claims will be dismissed without prejudice. *Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1052 (7th Cir. 2025) (dismissal on sovereign immunity grounds is without prejudice). This case will be closed.

---

[4] Banes also asks the court to follow the Northern District of Indiana's decision in *Isabell v. Trustees of Indiana University*, 432 F. Supp. 3d 786 (N.D. Ind. 2020), which held that the Eleventh Amendment did not bar a retaliation claim against a university official in her individual capacity. But *Isabell* was a failure-to-hire case; the plaintiff did not have an existing employment relationship with the state. *See id.* at 794–96. *Isabell* is inapplicable here.

8

ORDER

IT IS ORDERED that:

1. Defendants Jon Levine, Debra Jurmu, Steven Ackerman, John Karl Scholz, Beth Meyerand, Jake Smith, and Kelly Marks's motion for summary judgment, Dkt. 53, is GRANTED.

2. Plaintiff Graham L. Banes's claims are DISMISSED without prejudice as barred by sovereign immunity.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered June 5, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge